JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

| Present: The Honorable | ANDREW J. GUILFORD | | |
|---|---|---|---|
| Lisa Bredahl | Not Present | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |

| Proceedings: | [IN CHAMBERS] ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND ALTERNATIVELY FOR A NEW TRIAL, AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR A PERMANENT INJUNCTION AND ENHANCED DAMAGES |
|---|---|

Plaintiffs Quicksilver, Inc., and QS Wholesale, Inc. (collectively, "Plaintiffs"), sued Defendants Rox Volleyball, Inc., and 1st Place Team Sales, Inc. (collectively, "Defendants"), alleging that Rox Volleyball infringed on the Roxy trademark held by Plaintiff QS Wholesale, Inc. ("Complaint"). (Compl., Dkt. No. 1.)

A jury returned a verdict for Plaintiffs. (Dkt. No. 285.) Now before the Court is (1) Defendants' Motion for Judgement as a Matter of Law and, alternatively, for a New Trial ("JMOL") (Dkt. No. 312) and (2) Plaintiffs' request for entry of judgment against Defendants and Motion for a Permanent Injunction and for Enhanced Damages (Dkt. No. 313).

The Court DENIES Defendants' JMOL.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

The Court GRANTS in part and DENIES in part Plaintiffs' Motion for a Permanent Injunction and Enhanced Damages. The Court ORDERS that a permanent injunction issue as provided by this Order.

**BACKGROUND AND FINDINGS OF FACT**

Generally, factual statements in this Section and throughout shall constitute the Court's findings of fact.

Defendant 1st Place Team Sales, Inc., has operated as a team volleyball apparel distributor and in 2008, it launched a product line called "Rox Volleyball." It later launched a beach line of clothing. Rox Volleyball owns federal trademark registrations for their design logo and for the word "roxvolleyball."

Plaintiff QS Wholesale, Inc. has several Roxy trademarks and has sought to establish Roxy as "the only female-exclusive brand in action sports." The Roxy mark has been in circulation for over 20 years and is marketed to those seeking an active lifestyle.

There are no brick-and-mortar stores where both Rox Volleyball and Roxy products are sold. Some of Defendants' products have Rox Volleyball's design logo and the word "rox." These products do not use Defendants' word mark "Roxvolleyball." Plaintiffs filed this lawsuit asserting trademark infringement and other claims.

Specifically, Plaintiffs brought seven claims numbered as follows (1) federal trademark infringement under 15 U.S.C. §§ 1051, *et seq.*; (2) federal false designation of origin under 15 U.S.C. § 1125(a); (3) federal trademark dilution under 15 U.S.C. § 1125(c); (4) common law trademark infringement; (5) California trademark dilution under California Business and Professions Code § 14247; (6) statutory unfair competition under California Business and Professions Code §§ 17200, *et seq.*; and (7) common law unfair competition. (*Id.*) Plaintiffs voluntarily dismissed claims 4 and 7 during trial.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

After the trial, the jury returned a verdict that found there was "federal trademark infringement by the defendants, Rox Volleyball and 1st Place Team Sales, on one of the claims brought by plaintiffs." (Special Verdict, Dkt. No. 285, at 1.) The jury found that Defendants intentionally infringed. It also found that Defendants engaged in federal trademark dilution and willfully caused a likelihood of dilution of the Roxy trademark. (*Id.*) It awarded $42,376 in "actual damages . . . suffered as a result of wrongful conduct of defendants[.]" (*Id.*) Further, it awarded $161,775 in profits "earned by defendants [that were] attributable to wrongful conduct that [is] not taken into account" by the actual damages award. (*Id.*) Finally, it found that Plaintiffs did not know, and should not have known, of "Rox Volleyball's allegedly infringing use by March 29, 2009." (*Id.*)

Plaintiffs now seek entry of judgment, a permanent injunction, and enhanced damages. Defendants seek a judgment as a matter of law or, in the alternative, a new trial.

ANALYSIS AND CONCLUSIONS OF LAW

Generally, legal conclusions in this Section and throughout shall constitute the Court's conclusions of law.

1. Defendants' Motion for Judgment as a Matter of Law and Alternatively for a New Trial

Under "Rule 50(b) and/or Rule 52," Defendants bring a JMOL on Plaintiffs' claims and Defendants' affirmative defenses of laches and equitable estoppel. (Dkt. No. 312, at 1.) "In the alternative . . . , [Defendants] move[ for a new trial] under Rule 59 on the ground that the verdict was not supported by substantial evidence, against the clear weight of the evidence, and is therefore a miscarriage of justice." (*Id.*)

Defendants make numerous arguments for granting their JMOL or, alternatively, a new trial. None justify granting the motion. The Court generally addresses the arguments in turn.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

**1.1 Legal Standard**

Under Federal Rule of Civil Procedure 50(b), "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the Court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment–or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged–the movant may file a renewed motion for judgment as a matter of law . . . ." When considering this Motion, the Court "must decide whether the evidence construed in the light most favorable to the nomoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 999 (9th Cir. 2008); *see also Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013).

"A jury's verdict must be upheld if it is supported by 'substantial evidence.'" *SEC v. Todd*, 642 F.3d 1207, 1215 (9th Cir. 2011) (citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994)). "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Todd*, 642 F.3d at 1215 (quoting *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007) and *Paradise Valley*, 251 F.3d at 1227). In making this determination, "[t]he court must not weigh the evidence, but rather should ask whether [the nonmoving party] has presented sufficient evidence to support the jury's conclusion." *Todd*, 642 F.3d at 1215 (citing *Paradise Valley*, 251 F.3d at 1227-28). The court must "disregard all evidence favorable to the moving party that the jury is not required to believe." *See Wallace v. City of San Diego*, 479 F.3d at 624. Further, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *Todd*, 642 F.3d at 1215.

Under Rule 59, a trial court may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Specifically, a court may grant a new trial "only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Shimko v.*

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

*Guenther*, 505 F.3d 987, 993 (9th Cir. 2007) (internal quotations omitted). This determination is left to the sound discretion of the trial court. *See Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989). Such a motion may be granted on insufficiency of evidence grounds "only if the verdict is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result." *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1013 (9th Cir. 2007) (internal quotation marks omitted). The task of weighing conflicting evidence and making credibility determinations is the job of the jury and not the court. *Lucent Techs., Inc. v. Microsoft Corp.*, 387 F. Supp. 2d 1107, 1126 (S.D. Cal. 2011). Thus, courts will grant motions for a new trial only when the court has given full respect to the jury's findings, but is left with the firm conviction that a mistake has been made. *Landes*, 833 F.2d at 1371-72; *see also Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).

### 1.2 Evidence of Infringement

Generally, Defendants argue that Plaintiffs contended that "every" product sold by Defendants since 2009 infringes and that this is not supported by the evidence. (JMOL, Dkt. No. 312, at 1.) More specifically and among other things, they argue that "trademark infringement requires proof that confusion is 'probable, not merely possible,' among 'an appreciable number' of 'prudent' buyers." (*Id.*, at 1.) They assert that "the 'actual confusion' factor" of the *Sleekcraft* factors, *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), "is dispositive."

The eight-factor test in *Sleekcraft* is "an adaptable proxy for consumer confusion." *Signeo USA, LLC v. SOL Republic, Inc.*, 2012 U.S. Dist. Lexis 79356 at *19 (N.D. Cal. June 2, 2012). The cases cited by Defendants generally apply "actual confusion" in a balancing test of *all* the *Sleekcraft* factors. (*See* JMOL, Dkt. No. 312, at 2-4 (citing, for example, *Cohn v. Petsmart, Inc.*, 281 F.3d 837 (9th Cir. 2002); *Brookfirled Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999)).) Defendants cite *Cohen*, which states that normally evidence of actual confusion is hard to obtain, but given the "parties used the same trademark in the same city for six years to market closely-related goods and services . . . some evidence of actual confusion should

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

have become available if . . . coexisting use had created a genuine likelihood of confusion." *Cohn*, 281 F.3d at 842-43. Defendants generally rely on this point to argue that the Court should grant the JMOL based on the actual confusion factor alone. Unhelpful to Defendants' position is that the *Cohn* court's analysis also considered the remaining *Sleekcraft* factors in reaching its decision in that case. Defendants haven't convinced the Court that only a single *Sleekcraft* factor is dispositive here.

As noted, the Court must construe the evidence in the light most favorable to Plaintiffs and must grant Defendants' Motion if the only reasonable conclusion is contrary to the jury's verdict. *Acosta*, 718 F.3d at 828. The court also must "disregard all evidence favorable to the moving party that the jury is not required to believe." *See Wallace v. City of San Diego*, 479 F.3d at 624.

A significant portion of Defendants' JMOL concerns the "actual confusion factor." Defendants contend, among other things, that between 2008 and 2014 more than half a million "of the products now alleged to infringe" have been sold and that there "is no evidence that a single person has been confused." (JMOL, Dkt. No. 312, at 2-4.) They argue, for example, that testimony by witness Ms. Tully does not show confusion. (*Id.*, at 3; citing Dkt No. 206 1/21 AM Trial Transcript "TR" at 86:22-23.) They argue generally that the witnesses "affirmed they encountered no customer confusion." (Dkt. No. 312, at 2.) Ms. Tully's testimony includes the following.

> [W]e had practice one day and I told the girls we're getting–we're getting you a new Jersey from Rox, and a little girl . . . said, "Oh, you're getting us a ROXY jersey?" And I went, 'No, we're getting you a Rox jersey. ROXY? No. Rox. Oh." And she was very confused and I said, "Sorry, they're two different companies."

(1/21 AM TR at 86:18-25.) This evidence, and other evidence presented, must be construed in the light most favorable to the nonmoving party, and it favors Plaintiffs.

Defendants also commit significant portions of their JMOL attacking Plaintiffs' expert's

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

survey evidence of confusion. To the extent there might be concerns with Mr. Holland's survey, this evidence must be construed in the light most favorable to Plaintiffs and the Court is to disregard any facts favorable to Defendants that the jury is not required to believe.

Moving to the "similarity of the marks" and remaining *Sleekcraft* factor, Defendants argue the demonstratives introduced at trial do not "attempt to recreate the conditions under which prospective purchasers make their choices." (JMOL, Dkt. No. 312, at 6.) They argue that "there are many key differences in how buyers encounter the marks," that their "ads are replete with volleyball imagery and text," and that it is undisputed that the parties' logos are completely dissimilar. (*Id.*) They further argue that "rox" and "Roxy" have different sounds, derivation, and meanings." (*Id.*, at 7.) They also contend that their "evidence that [the Rox Volleyball] consumer base . . . is sophisticated was unrebutted." (*Id.*, at 8.) Defendants make numerous citations to the evidence presented at trial that they argue favors their position, but, again, "[t]he [C]ourt must disregard all evidence favorable to the nomoving party . . . ." *See Wallace*, 479 F.3d at 624.

Plaintiffs contend that they showed Roxy is a strong mark because they have made apparel for over 20 years, have numerous federal trademarks, and had annual sales of $250 million dollars in 2007. (Opp'n, Dkt. No. 314, at 9-10.)

The Court has already described some of the evidence that favors the jury verdict when taking it in the light most favorable to Plaintiffs. After reviewing the evidence, Defendants have failed to show that the verdict is unsupported by sufficient evidence and that the only reasonable conclusion as to the verdict is contrary to the verdict. *See Theme Promotions, Inc.*, 546 F.3d at 999. They have further failed to show that the "verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or [that their motion should be granted] to prevent a miscarriage of justice." *Shimko*, 505 F.3d at 993.

Accordingly, Defendants' motion DENIED as to infringement.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

**1.3 Evidence of Dilution**

Under 15 U.S.C. § 1125(c), "[s]ubject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."

A famous mark is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). "In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties. (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark. (iii) The extent of actual recognition of the mark. (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or in the principal register." 15 U.S.C. § 1125(c)(2).

At issue here is dilution by blurring, which is "association from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." *Id.* § 1125(c)(2)(b). "In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following: (i) The degree of similarity between the mark or trade name and the famous mark. (ii) The degree of inherent or acquired distinctiveness of the famous mark. (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark. (iv) The degree of recognition fo the famous mark. (v) Whether the user of the mark or trade name intended to create an association with the famous mark. (iv) Any actual association between the mark or trade name and the famous mark." 15 U.S.C. § 1125(c)(B).

Defendants argue that there is not sufficient evidence of fame in 2008 for Plaintiffs' claims

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

to stand. (Dkt No. 312, at 10). They argue that "[t]ypically, fame is established 'by surveys showing that a large percentage of the general public recognizes the brand.'" (*Id.*, at 11 (quoting *Apple, Inc. v. Samsung Elecs. Co.*, 2012 U.S. Dist. LEXIS 90889 at *30-*33).) Defendants argue that Plaintiffs "fell short of meeting" the fame standard and "did not present **any** survey of public recognition." (Dkt. No. 312, at 11 (emphasis in original).) They also argue that Plaintiffs "rest[] on assertions that 'Roxy' is registered and that, in 2007, U.S. sales were $250 million." (*Id.*)

Defendants haven't convinced the Court that survey evidence is required to show fame. Courts determining whether a mark is famous appear to consider varied evidence. *See Jada Toys, Inc. v. Matel, Inc.*, 518 F.3d 628, 635 (9th Cir. 2008) (stating during the dilution analysis that "a reasonable trier of fact could conclude that the HOT WHEELS mark is famous: it has been in use for over thirty-seven years; 350 million dollars have been expended in advertising the mark; three billion HOT WHEELS units have been sold since the inception of the mark; and HOT WHEELS are sold in all fifty states and throughout the world"). Section 1125(c)(2)(A) provides factors to consider in determining fame. Plaintiffs presented, among other things, evidence that Roxy has been used for over 20 years and that they spent millions of dollars to promote Roxy. (Dkt. No. 314-2, 1/13 PM TR 78:14-17.) In 2007, Roxy was sold in over 9,000 locations nationwide and made $250 million in sales. (*Id.*, 81:2-15.) The mark is also registered. (Wachs Decl., Dkt. No. 314, Ex. 1042.) Considering the 1125(c) factors for determining whether a mark is famous, the record supports that finding.

Turning to the blurring factors, Defendants commit less than a page of their motion to argument on this point. They basically contend that McCarthy on Trademarks provides that there must be virtual identity of the marks to find blurring. (Dkt. No. 312, at 12.) They argue that the "degree of recognition" factor only favors Plaintiffs if the mark is "extraordinarily famous." (*Id.*)

The marks only differ by a single letter and there was evidence that the fonts used were the same. This supports a finding of similarity between the marks. Plaintiffs numerous federal trademark registrations weighs in favor of distinctiveness. Among other evidence, questions

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

to witness Ms. Sigourney at a volleyball tournament by "five girls" "asking if there was any association between the two brands" shows some association between them. (Dkt. No. 306, 1/21 AM TR 131:13-15.) On the record before it, Defendants JMOL must be DENIED as to dilution.

### 1.4 Evidence of Damages

The jury awarded Plaintiffs $42,376 in actual damages and $161,775 of Defendants' profits. (Dkt. No. 285.) The prevailing party to a trademark infringement action is entitled, subject to the principles of equity, to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. . . . *In assessing damages, the court may enter judgment according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.* If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a) (emphasis added).

Defendants argue that there is no evidence of monetary loss concerning the actual damages. (Dkt. No. 312, at 13.) They argue that Plaintiffs' damages expert Mr. Green "opined that a *hypothetical* 'royalty' for a license to the Roxy mark would be for 5% of revenue." (*Id.*) Defendants argue and cite authority seeking to support their position that "where no prior licensing agreement existed between the parties in a trademark infringement suit, a royalty theory of recovery is inappropriately speculative." (Dkt. No. 312, at 13 (quoting *Buffalo Wild Wings, Inc. v. Buffalo Wings & Rings*, 2011 U.S. Dist. LEXIS 112050 at *8-*9 (D. Minn. Sept. 29, 2011)).) Those cases essentially say that the reasonable royalty theory is inappropriate where the parties did not have any prior licensing relationship or prior negotiations to license the mark. But Plaintiffs cite cases that permit damages measurements like those presented here. A case cited by Plaintiffs says "[a] reasonable royalty based on a hypothetical negotiation can be a measure of actual damages in a trademark infringement case." *adidas*

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

*Am., Inc. v. Payless Shoesource, Inc.*, 2008 WL 4279812 at *12 (D. Or. Sept. 12, 2008) ("There is no evidence of monetary loss to adidas in the nature of lost sales. The royalty figure awarded by the jury is consistent with royalties between adidas or Payless with third parties and also with royalties between third parties."; *see also QS Wholesale, Inc. v. World Marketing, Inc.*, 2013 WL 1953719 at *4 (C.D. Cal. May 8, 2013).

Section 1117 confers a great deal of discretion on a district court in fashioning a remedy for trademark infringement. *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968). Based on the evidence presented at trial, the Court is persuaded that the award should stand.

The Court DENIES Defendants' motion as to damages.

### 1.5 Evidence of Wilfulness

Defendants argue there is insufficient evidence of wilfulness. (Dkt. No. 312, at 14.) They argue there is no evidence that Defendants deliberately deceived customers. (*Id.*) They maintain that the "unrebutted evidence is that Rox Volleyball reasonably believed (correctly) that consumers are not confused." (*Id.* (parenthesis in original).) Specifically concerning dilution, Defendants argue that Plaintiffs never alleged that Rox Volleyball diluted Roxy. (*Id.*) Lastly, they argue that the "belief that [Defendants'] use was not diluting is further bolstered by the authorities they cited supporting their assertion that Roxy was not a famous mark." (*Id.*, at 15.)

Among other things, Plaintiffs argue that the evidence shows that Defendants knew of the Roxy mark when they adopted their own mark and that Defendants reused the repeating "rox" pattern after representing they would not. (Dkt. No. 314, at 18.) Concerning dilution specifically, Plaintiffs cite *Apple, Inc. v. Samsung Elecs. Co.*, 920 F. Supp. 2d 1079, 1098 (N.D. Cal. 2013). (*Id.*)

After reviewing the evidence, there is sufficient evidence of wilfulness. Among other

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

evidence, Defendants knew of the Roxy mark when they started their business and, after representing that they would not, used the repeating "rox" pattern. Other evidence includes the fact that after Defendants communicated with Plaintiffs, individuals in Defendants' company in charge of marketing were not told of the potentially infringing issues.

The Court DENIES Defendants' motion as to wilfulness.

### 1.6 Defendants' Affirmative Defenses of Laches and Equitable Estoppel

Defendants assert affirmative defenses of laches and equitable estoppel. The Court turns first to laches.

"It is well established that laches is a valid defense to Lanham Act claims." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). "A party asserting laches must show that it suffered prejudice as a result of the plaintiff's delay in filing suit." *Id.* "While laches and the statute of limitations are distinct defenses, a laches determination is made with reference to the limitations period for the analogous [state] action at law." *Id.* "If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable." *Id.* "However, if suit is filed outside of the analogous limitations period, courts have often presumed that laches is applicable." *Id.* at 836. "[T]he presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period." *Id.* at 837.

The Court already decided that a four year statute of limitations period applies. (*See* Order on Motion for Summary Judgment, Dkt. No. 256, at. 23.) With a four year limitations period, if Plaintiffs has knowledge or constructive knowledge by March 29, 2009 (four years before the filing of the lawsuit) then there would be a presumption that laches applies. Plaintiffs argue that there was at least constructive knowledge to trigger the statute by March 29, 2009 because Defendants staffed large product displays at four major volleyball events between December 2008 and mid-March 2009 and had registered the roxvolleyball.com domain name in 2008. (Dkt. No. 312, at 19.) Although Defendants rely on this information, "a trademark

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

owner is not required to constantly monitor every nook and cranny of the entire nation and to fire both barrels of [its] shotgun instantly upon a possible trigger." *adidas Am., Inc. v Kmart Corp.*, 2007 WL 2044857 at *8 (D. Or. June 15, 2008) (internal citation and quotation omitted, alteration in original). There was testimony that Plaintiffs monitor for infringement, but the evidence does not sufficiently show that Plaintiffs knew or should have known of the potential infringement by March 29, 2009. The jury found that same to be true in the special verdict.

Because the lawsuit was filed within the limitations period, there is a strong presumption that laches does not apply. Defendants have not overcome that strong presumption.

Defendants also argue that equitable estoppel bars Plaintiffs' claims. (Dkt. No. 312, at 23.) The parties stipulated that the elements of the defense are: "(1) Plaintiffs knew of the alleged infringement; (2) Plaintiffs' actions or failure to act led Defendants to believe Plaintiffs would not attempt to enforce Roxy against Defendants, and (3) Defendants relied on Plaintiffs' actions to their detriment." (Pretrial Conference Order, Dkt. No. 241, at 16.) Defendants argue, among other things, that Plaintiffs had knowledge of the alleged infringement no later than April 2009, that Plaintiffs' representations that they "take action" if their rights are violated led Defendants to believe Plaintiffs would not attempt to enforce the Roxy mark, and that they made investments in their company while Defendants were silent. (Dkt. No. 312, at 24-15.) Plaintiffs argue that there must be an intentionally misleading representation for equitable estoppel to apply. (Dkt. No. 314, at 24.) The JMOL states, among other things, that "Defendants relied on Plaintiffs' actions to their detriment" and further cites authority concerning "inaction" or "silence." (Dkt. No. 321, at 23-24.) After reviewing the evidence, Defendants haven't convinced the Court that the actions or inactions of Plaintiffs sufficiently lead Defendants to believe Plaintiffs would not attempt to enforce Roxy against Defendants.

The Court DENIES Defendants' motion as to its equitable defenses.

**2. Permanent Injunction**

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

The Lanham Act vests courts with "power to grant injunctions, according to principles of equity and upon such terms as the court may deem reasonable . . . ." 15 U.S.C. § 1116(a). Whether to impose a permanent injunction in trademark cases is a decision within the Court's discretion. *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986). The Court must be guided by traditional equitable principles in determining whether injunctive relief, an equitable remedy, is appropriate." *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing *eBay, Inc. v. MerchExchange, LLC*, 547 U.S. 388, 391 (2006)). "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Those factors require "(1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391; *Apple, Inc. v. Psystar Corp.*, 658 F.3d 1150, 1152-53 (9th Cir. 2011). After the test for a permanent injunction is met, a court may also order the destruction, or another reasonable disposition, of all infringing copies. 17 U.S.C. § 503(b); *Hounddog Prods., LLC v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011); *WPOW, Inc. v. MRLJ Enters.*, 584 F. Supp. 132, 135 (D.D.C. 1984).

### 2.1 Irreparable Harm and Inadequate Legal Remedies

The first and second factors of the *eBay* test are often considered together. *See MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 582 (E.D. Va. 2007); *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007); *Smith & Nephew, Inc. v. Synthes*, 466 F. Supp. 2d 978, 982-83 (W.D. Tenn. 2006) ("[T]he irreparable harm requirement contemplates the inadequacy of alternate remedies available to the plaintiff.").

Defendants argue that "a plaintiff may no longer argue that 'infringement itself constitutes irreparable harm,' but instead must specifically prove 'the existence of intangible harms such as a loss of goodwill.'" (Dkt. No. 315, at 5-6.) Court's have held that evidence of loss of

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

control over business reputation and damage to goodwill can constitute irreparable harm. *See, e.g.*, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001).

The thrust of Defendants' position is that Plaintiffs seek to justify an injunction based on "concerns" that Defendants will interfere with Plaintiffs' control over the "extensive reputation and goodwill of the ROXY mark." (Dkt. No. 315, at 5.) Defendants assert that "concern" is insufficient. Defendants seek to support their contention that there must be evidence of actual damage to goodwill by citing *Active Sports Lifestyle USA, LLC v. Old Navy, LLC*, 2014 U.S. Dist. LEXIS 45575 (C.D. Cal. Mar. 21, 2014).

The *Active Sports* court relied to some extent on the fact that the jury in that case did not award damages in reaching its ruling. By contrast, the jury's damage award here favors Plaintiffs. The *Active Sports* court stated that "though the jury may have found [the defendant] liable for infringement, its decision to award no damages at all indicates that the infringement is not what was driving sales of [the defendant's] products, nor damaging [the plaintiff's] sales or the goodwill associated with [the plaintiff's] mark." *Id.* at *8. In this case, the jury awarded actual damages and disgorgement of Defendants' profits.

As noted, evidence of loss of control over business reputation and damage to goodwill can constitute irreparable harm. There was testimony that Roxy is marketed as a female only brand in action sports while Defendants market to both men and women. There was evidence that Roxy emphasizes "very little makeup" on its models while images of Defendant's models show them with lots of makeup. This evidence, with the jury's award of damages, weighs in favor of finding an irreparable harm to goodwill and reputation.

As for the adequacy of money damages, courts consider money damages inadequate when awarding them would lead to multiplicity of suits. *MGM Studios, Inc. v. Grokset, Ltd.*, 518. F. Supp. 2d 1197, 1220 (C.D. Cal. 2007). The jury found infringement here. If an injunction does not issue to stop such infringement, Plaintiffs will need to continuously return to court to recover damages.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

The Court concludes that these factors weigh in favor of issuing a permanent injunction.

### 2.2 Balance of Hardships

"Balancing the hardship involves considering the 'relative effect of granting or denying an injunction on the parties.'" *Deckers Outdoor Corp. v. Ozwear Connection Pty., Ltd.*, 2014 WL 4679001 at *13 (C.D. Cal. Sept. 18, 2014) (quoting *i4i, Ltd. v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010)). Plaintiffs will be harmed by the continued infringement of their trademark. Defendants generally argue that Plaintiffs' "broad injunction sought" would harm them because the amount of money they have invested in branding their company "would be wiped out." (Dkt. No. 315, at 10.)

The hardship factor favors Plaintiffs because of the continued infringement. The hardship that Defendants will face is due, in part, to their wilful infringement and failure to comply with the law. The likely scope of the injunction reduces Defendants' purported hardship because an injunction would be narrower than Plaintiffs' proposed injunction.

This factor favors Plaintiffs.

### 2.3 The Public Interest

The public interest is served by preventing the continued infringement of a trademark. "The public [also] has an interest in avoiding confusion between two companies' products." *Internet Specialities W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009).

The Court finds this factor favors Plaintiffs.

### 2.4 Conclusion

The Court finds that a permanent injunction should issue. But in doing equity, the Court will

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

issue an injunction narrower than the injunction proposed by Plaintiffs. Plaintiffs' proposed injunction would, among other things, prohibit Defendant from using the word "rox" with "volleyball." That result is not equitable for several reasons, including that the prohibition would prohibit Defendants from using their registered trademark.

    **2.5 The Injunction**

The Court finds that injunctive relief is reasonable and appropriate to prevent future violations of the law. The Court ORDERS that a permanent injunction issue as set forth in the following:

After receiving actual notice of the injunction by personal service or otherwise, Defendants, and their affiliates, directors, officers, employees and agents, who are in active concert with Defendants, are PERMANENTLY ENJOINED from:

(1) Selling, distributing for sale, producing, manufacturing, licensing, or using apparel bearing "rox," or marketing such apparel with "rox," except where both Defendants' design logo and the word "volleyball" are used in at least equal size font to "rox." For example:



(2) But Defendants are permitted to use



without the word "volleyball" in one limited instance. Defendants can use their design logo coupled with the word "rox" on team volleyball apparel where (A) governing rules limit the size of any logo or brand on such apparel and (B) including "volleyball" in equal size font to "rox" is impossible.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

Defendants are permitted, for a period of six months after this Order is issued, to sell and distribute their existing inventory of infringing products. During the one year period, Defendants may only sell and distribute the infringing products through their current channels of distribution.

Within 60 days of the issuance of this Order, Defendants are further ORDERED to file with the Court and serve on Plaintiffs a writing under oath setting forth with specifics how they are complying with the injunction. At the end of the six month phase out period, Defendants must destroy any remaining infringing products and file with the Court a writing under oath (1) specifying the product styles and quantities of each product style destroyed and (2) declaring that no infringing products remain in Defendants' inventory.

### 3. Enhanced Damages

Plaintiffs seek enhanced damages to "discourage future infringement and dilution." (Dkt. No. 313, at 21.) Plaintiffs arguments essentially center on Defendants' knowledge of the Roxy mark, their statements responding to Plaintiffs' cease-and-desist letter, and their representations to the PTO. (*Id.*, at 21-24.) They also argue that enhanced damages are necessary to fully compensate them for the harm caused. (*Id.*)

As noted in Section 1.4, section 1117 confers a great deal of discretion on a district court in fashioning a remedy for trademark infringement. *Maier Brewing Co.*, 390 F.2d at 121. The district court can increase the damages assessed up to three times those found as actual damages, and it may respond to a perceived inadequacy or excessiveness of profits by "entering as a judgment such a sum as may be found to be just 'according to the circumstances of the case.'" *Bandag, Inc. v. AL Bolser's Tire Stores, Inc.*, 750 F.2d 903, 917 (Fed. Cir. 1984) (quoting 15 U.S.C. section 1117). Nevertheless, any award in these two circumstances "shall constitute compensation and not a penalty," and all awards are expressly subjected to the "principles of equity." 15 U.S.C. § 1117(a).

It is essential in fashioning the remedy in this case to consider the legal conclusion of liability

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-0512 AG (JPRx) | Date | July 19, 2015 |
|---|---|---|---|
| Title | QS WHOLESALE, INC., et al. v. ROX VOLLEYBALL, INC., et al. | | |

and the nature of the infringing actions. The Court also considers Defendants' intent and any adverse effects on Plaintiffs.

The Court finds that the award of actual damages and Defendants' profits compensate Plaintiffs for any harm. The Court construes many of Plaintiffs' arguments as bordering on asking for treble damages as a way to punish Defendants.

The Court finds the current award adequately compensates Plaintiffs and does not punish Defendants. The Court DENIES Plaintiffs' motion for enhanced damages.

**DISPOSITION**

The Court DENIES Defendants' JMOL.

The Court GRANTS in part and DENIES in part Plaintiffs' Motion for a Permanent Injunction and Enhanced Damages.

The Court reaches this result after reviewing all the arguments made and admissible evidence presented by the parties. Any argument not specifically addressed was either unpersuasive or not necessary to reach the Court's holding.

The Court will enter a Judgment reflecting this Order.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | | |
| | lmb | |